# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

v.             CRIMINAL ACTION NO. 2:09-cr-00222

RICHARD TIMOTHY WEAVER, and
ELMER LUKE MOORE,
MICHAEL LEE PHELPS,
BRIAN SCOTT MITCHELL,
KIM H. BERRYMAN, and
DONNIE RAY WORKMAN,

     Defendants.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Richard Timothy Weaver's Motion to Dismiss Counts 29 and

41 for Failure to State a Criminal Offense [Docket 619] and Motion to Dismiss Count 19s as

Factually Insufficient [Docket 1254].  Motions to Dismiss filed by Defendants Michael Lee Phelps

[Docket 620], Elmer Luke Moore [Docket 884], Brian Scott Mitchell [Dockets 915, 1266], and Kim

H. Berryman [Docket 917] expressly adopt the argument in the former motion.

### I.  BACKGROUND

Defendants Weaver, Phelps, Moore, Mitchell, and Berryman  are among fifty-six members

and associates of the Pagans Motorcycle Club (PMC) charged in this case.  They each are charged

with possessing firearms while being employed for a prohibited person in violation of 18 U.S.C.§

922(h).  All but Defendant Weaver also are charged with conspiring to violate § 922(h) in violation

18 U.S.C. § 371.  Additionally, Defendants Weaver and Moore are named in various other counts in the superseding indictment.

According to the allegations in the superseding indictment, the § 922(h) charges stem from orders given to Defendants by Floyd Moore, who was then the national vice president of the PMC.[1] By virtue of his position in the PMC hierarchy, Floyd Moore was able to issue orders and assign tasks to lower-ranking PMC members.  He also is a convicted felon prohibited from possessing a firearm.  In an apparent attempt to circumvent the firearm prohibition, Moore ordered a number of PMC members in the club's Charleston, West Virginia, chapter to obtain concealed firearms permits and to carry those firearms on their persons.  On at least one trip from West Virginia to Virginia, these members accompanied Floyd Moore while in possession of firearms.  He is alleged to have told various PMC members that he did not need to carry a firearm because other members carried guns for him.

Defendants have raised a litany of challenges to the counts charging violations of § 922(h). They argue that the charges are factually deficient, that § 922(h) is unconstitutionally vague on its face and as applied, that the statute is overbroad, that it violates the First Amendment right to freedom of association, that it violates the Fourth Amendment right to be free from unreasonable seizures, and that it violates the Second Amendment right to bear arms.[2]

---

[1]  Floyd Moore is a defendant in this case.  He entered a plea of guilty on December 18, 2009, to Count One of the original indictment, which charged him with racketeering in violation of 18 U.S.C. § 1962(c).

[2]  Defendant Moore further argues that 18 U.S.C. § 922(h) violates his rights under the Constitution of West Virginia, *id*. at 1, and that it violates his "5th Amendment protected property right" to carry a firearm pursuant to his state-issued concealed weapons permit, *id*. at 4–5.  The right to challenge a federal law on the grounds that it is incompatible with state law went the way of the Articles of Confederation in 1788.  *See* U.S. Const. art. VI, cl. 2 ("This Constitution, and the Laws of the United

Defendants' arguments and the Government's responses rely on their respective interpretations of the statutory text of § 922(h).  These interpretations vary significantly.  It therefore is necessary at the outset to settle upon an interpretation of the text of § 922(h).   The construction of § 922(h) is a matter of first impression in this or any jurisdiction.  The parties have briefed this matter extensively.  The Court heard arguments on these motions at a hearing held on June 3, 2010. This matter is ripe for disposition.

## II.  DISCUSSION

### A.  Construction of § 922(h)

18 U.S.C. § 922(h) provides:

It shall be unlawful for any individual, who to that individual's knowledge and while being employed for any person described in any paragraph of subsection (g) of this section, in the course of such employment—
>    (1) to receive, possess, or transport any firearm or ammunition in or affecting interstate or foreign commerce; or
>    (2) to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

The disagreement between the Government and Defendants arises primarily from the different meanings they attribute to the word "employed" in § 922(h).  Defendants contend that "employed" is synonymous with "hired for wages" and denotes the presence of an employer-employee relationship.   The Government argues that "employed" should be given a broader meaning, as in "to make use of." The Government's interpretation of "employed" would include, but would not be limited to, the hiring of a person for wages.

---

States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."); *see also McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, (1819) ("States have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by Congress. . . . ").

18 U.S.C. § 922(h) was enacted in its current form in 1986. Firearms Owners' Protection Act, Pub. L. No. 99-308, § 102, 100 Stat. 449, 452 (1986). A similarly worded predecessor statute dates to 1968. Omnibus Crime Control and Safe Streets Act of 1967, Pub. L. No. 90-351, §1202, 82 Stat. 197, 236 (formerly codified at 18 U.S.C. § 1202(b)). Despite its long tenure in the United States Code, no court in any jurisdiction has had occasion to expound upon the meaning of § 922(h) or its predecessor in a written opinion. Accordingly, the Court turns to the familiar principles of statutory construction to interpret the statute.

The analysis of § 922(h) must begin with the statutory text. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999). "It is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'" *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.*, 530 U.S. 1, 6 (2000)). The statutory terms must be given "their 'ordinary, contemporary, common meaning, absent an indication Congress intended [them] to bear some different import.'" *Stephens v. Astrue*, 565 F.3d 131, 137 (4th Cir. 2009) (quoting *North Carolina ex rel. Cooper v. Tenn. Valley Auth.*, 515 F.3d 344, 351 (4th Cir. 2008)). Each word should be given effect so that no part of the text drafted by Congress is rendered "superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001).

The Court's interpretive task becomes more difficult where, as here, the language of the statute is reasonably susceptible of more than one meaning. Common sense and experience have produced a number of general principles to follow. The words in the statute should not be viewed in isolation. If a word is susceptible of more than one meaning, its meaning should be ascertained,

if possible, from the context in which it is used.  *See United Sav. Assoc. v. Timbers of Inwood Forest Assoc.*, 484 U.S. 365, 371 (1988); *United States v. Heirs of Boisdore*, 49 U.S. (8 How.) 113, 122 (1850).  If the statute includes a common legal term of art, it can be presumed that Congress was aware of the specialized meaning of the term and intended to adopt that meaning.  *Morissette v. United States*, 342 U.S. 246, 263 (1952).  It also may be presumed that Congress did not intend to enact unconstitutional statutes.  Thus, if practicable, courts should endeavor to construe statutes in a manner that does not make their meaning or effect unconstitutional.  *Skilling v. United States*, ___S. Ct. ___, slip op. at 38 (June 24, 2010).

The Government and Defendants suggest competing but nonetheless plausible interpretations of § 922.  Both parties rely, at least in part, on dictionary definitions of the word, "employed."  As Defendants emphasize, "employed" can be defined as "to be hired for wages."  The Government counters that the primary dictionary definition of employ is "to make use of," and that Defendants are selectively highlighting the definition of the term that best suits their purpose even though it may not be the most common definition.  The Court puts little stock in the parties' arguments over the dictionary definition of "employed," however.  Both meanings of "employed" are commonly used in ordinary speech.  Moreover, Congress has used the word "employed," or variations thereof, in both senses throughout Title 18 of the United States Code.[3]  *Compare* 18 U.S.C. § 546 (referring to vessels "employed for" smuggling), *with* 18 U.S.C. 3168 (providing that a reporter "may be employed for any period of time," meaning hired for compensation).

The Government and Defendants take an overly myopic approach to the interpretation of §

---

[3]  The Court has contemplated that the two opposing, yet plausible, meanings advanced by the parties for the term "employed" might be indicative of ambiguity.  *See also infra* n. 5.

922(h) by focusing on the word "employed" while largely ignoring the context in which it is found. Its intended meaning may be gleaned from the words around it. Furthermore, a second word with with the root "employ" appears in § 922(h): The phrase "in the course of such employment," which is a legal term of art, also is found in the statute. Each use of "employ" in § 922(h) should be given meaning so that neither is rendered surplusage.

Employ is first used in the following phrase, "any individual, . . . while being employed for any [prohibited] person." The meaning of "employed for" in any sentence generally is determined by the word or words that follow it; the subject is "employed for" *what object*? Here the subject is a defendant and the object is "any [prohibited] person." The parties vigorously disagree as to whether "employed for" means to be hired by or to be used by the prohibited person. One of these two manners of using "employed for" offends the ear, however. In colloquial usage, saying that an individual is "employed for" *another person* connotes the existence of an employer-employee relationship between the two. This becomes obvious if names are inserted into the text of § 922(h). Consider the following example: "Joe, while being employed for Mary, and in the course of this employment, possessed a firearm." A listener hearing this statement naturally would assume that Joe worked for Mary and that he carried a gun as a part of his job.

The term "employed for" would not signify the existence an employer-employee relationship in every context, of course. Consider examples where "employed for" is followed not by a person, but by word indicating a task or a function. A rake is "employed for" gardening. Volunteers may be "employed for" storm cleanup. When used in this manner, "employed for" is easily understood to mean "to make use of." It would be unnatural, however, to say that "Joe was employed for Mary" in the sense that the he is put to some generic, non-work-related, use by Mary. The meaning of

6

"employed for" is highly dependent on context.  In everyday usage, being employed for a *person* means something very different from being employed for a *function*.

Congress drafted § 922(h) so that it refers to a being "employed for" a person.  There is no definition or other evidence of a specialized meaning for "employed for," so the Court must assume that Congress intended it to have its common meaning in the context in which it is used.  Section 922(h) refers to an individual "employed for any [prohibited] person."  This usage suggests that an employer-employee relationship must be present before criminal liability can arise.[4]

The remainder of the statutory text is consistent with this conclusion.  The second use of "employ" is "in the course of such employment."  "Course of employment" is a legal term of art with venerable roots in the law of agency and employment.  *See, e.g., Phila. & R. R. Co. v. Derby*, 55 U.S. (14 How.) 468, 486 (1853); Joseph Story, Commentaries on the Law of Agency § 308 (1839).  The term has retained its character as a reference to acts within the employer-employee relationship.  Although the term can have slightly different meanings in different contexts, "course of employment" can be defined generally as "[e]vents that occur or circumstances that exist as part of one's employment; esp., the time during which an employee furthers an employer's goals through employer-mandated directives."  Blacks Law Dictionary 378 (8th ed. 2004); *cf. Faragher v. City of Boca Raton*, 524 U.S. 775, 793–99 (1998) (discussing traditional scope of "course of employment" in Title VII context).  The term is used elsewhere in federal criminal law.  In each instance, the term

---

[4]  This conclusion is consistent with dicta in one of the few cases to have discussed § 922(h) or its predecessor.  In that case, the court warned a prohibited person who was the president of an armed-guard security business that "he must make the choice between either abandoning his business or subjecting himself and perhaps his employees to potential prosecution for violation of the federal firearms control statutes."  *Thompson v. Dep't of Treasury*, 557 F. Supp. 158, 162 (C.D. Utah 1982) (citing § 922(h)'s predecessor).

is used as a reference to acts or events occurring within the scope of the employer-employee relationship.  *See, e.g.*, 18 U.S.C. § 843(h)(1); 18 U.S.C. § 922(x)(3); 18 U.S.C. § 1905; 18 U.S.C. § 2511(a)(2); 21 U.S.C. § 333(b)(2); 21 U.S.C. § 822(c).  There is no reason to believe that Congress intended "course of such employment" to have a novel meaning in § 922(h).  *See Morissette*, 342 U.S. at 263.  The term therefore will be given its traditional meaning.

A proper construction of § 922(h) should make no part of the text superfluous.  The two uses of "employ" in the statute serve separate functions.  The first, "while being employed for any [prohibited] person," indicates that the existence of an employer-employee relationship is an essential element of the offense.  The second, "during the course of such employment," would require the Government to prove that the accused's firearm possession was in the course of his employment for the prohibited person.

With the terms clarified, the essential elements of a § 922(h) violation are evident from the text: (1) the defendant was employed for a prohibited person; (2) the defendant knew the employer was a prohibited person; and (3) the defendant received, transported, or possessed a firearm in interstate commerce; and (4) such receipt, transportation, or possession was in the course of defendant's employment.[5]  Because they are not defined, the words "employed" and "course of

_____

[5]  Defendants have argued that it is appropriate to consider the statutory history of § 922(h) and to apply the rule of lenity.  Because the Court finds the meaning of the terms used in the statute to be plain, it need not resort to the rule of lenity.  *See Barber v. Thomas*, __ S. Ct. __, slip op. at 13 (June 7, 2010).  Nevertheless, it may be noted that if the Court had not found the meaning to be plain, as between the constructions advanced by the Government and by the Defendants, application of the rule of lenity would compel the adoption of Defendants' construction.  For the same reason, it is unnecessary to the disposition of the pending motions to delve into the statute's legislative history.  However, the statutory history, which is limited to statements from the floor of the Senate, supports the Court's conclusion.  Senator Russell Long of Louisiana made the following remarks when he introduced the amendment that would become § 922(h)'s predecessor: "[T]he Title would prohibit persons employed by another from receiving, possessing or transporting a firearm in the course of

employment" will be given their general common law meanings.[6]  *See Comm. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739‒40 (1989).  At least in this instance, the common law and ordinary meanings of these words are essentially the same.  Further, for the purposes of clarity, the Court finds that employment in the context of § 922(h) requires the Government to prove the payment of wages, or some other form of tangible compensation.

### B.  Sufficiency of Indictment

Defendants request that the counts asserting violations of § 922(h) be dismissed under Rules 7(c) and 12(b) of the Federal Rules of Criminal Procedure for failing to allege an essential element of the offense.  Specifically, Defendants contend that the superseding indictment does not allege that

---

his employment if he knows his employer is [a prohibited person].  These are the mobsters—the *hired* gunmen."  *See* 114 Cong. Rec. 14773 (1968) (reprinted as appendix to *Stevens v. United States*, 440 F.2d 144 (6th Cir. 1971)) (emphasis added).  In similar terms suggestive of a traditional employer-employee relationship, Senator Long also stated: "If a person is in the employ of a person who is not permitted to possess a firearm, then the employee would not be permitted in the performance of his employment to possess a firearm . . . ."  *Id*.  Although cited by the Government in their brief, Senator Long's words appear to be more helpful to Defendants.

[6]  The Supreme Court has summarized the general common law meaning of employee as follows:

> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished.  Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired  party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323‒24 (1992) (quoting *Comm. for Creative Non-Violence*, 490 U.S. at 751‒52).  While the "method of payment" is a factor to consider, some form of payment appears to be assumed.

9

they were employed by Floyd Moore.

Rule 7(c) provides that an indictment should be "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Cr. P. 7(c)(1). The indictment "should be sufficiently detailed to apprise the defendant of the charge against him so that [he] may prepare his defense." *United States v. Duncan*, 598 F.2d 839, 848 (4th Cir. 1979); *see also United States v. Daniels*, 973 F.2d 272, 274 (4th Cir. 1992). It must allege each element of the charged offense. *United States v. Talebnejad*, 460 F.3d 563, 571 (4th Cir. 2006). The omission of an essential element is fatal to the indictment as the Court is therefore without jurisdiction to try the defendant on the defective count. *United States v. Hooker*, 841 F.2d 1225, 1231–32 (4th Cir. 1988).

The only element of a § 922(h) offense in question is whether the superseding indictment properly alleges that Defendants were employed for Floyd Moore. Regarding this element of the offense, Count Nineteen of the superseding indictment, which charges a conspiracy to violate § 922(h), states:

> Floyd B. Moore . . . employed the other defendants in that he was their superior in the PMC hierarchy and that he would and did order the other defendants to perform the tasks he assigned, including the task to possess and carry firearms, and that the other defendants did obey and carry out these orders as required by the PMC hierarchy.

(Docket 985 at 48–49.) Count Nineteen further states: "[T]he other defendants would and did possess firearms, in and affecting interstate commerce, in the course of and while being employed by Floyd B. Moore." (*Id*. at 49.) Count Twenty-One, which alleges a substantive violation of § 922(h), contains similar language: "[Defendants], who all knew that Floyd B. Moore . . . was a convicted felon, and while being employed for, and in the course of such employment for Floyd B. Moore, . . . did knowingly possess and transport firearms and ammunition in and affecting interstate

10

commerce." (*Id*. at 53.)

Counts Nineteen and Twenty-One unambiguously allege that Defendants were employed for Floyd Moore. These allegations are adequate to allow Defendant's to prepare a defense to the § 922(h) charges. It is immaterial that the superseding indictment does not contain a level of factual detail, which if true, would establish beyond a reasonable doubt that Defendants were employed for Floyd Moore. Indictments only must adequately put defendants on notice of the charges against them. Likewise, it is immaterial that the superseding indictment alleges that Floyd Moore's superior position in the PMC hierarchy enabled him to issue orders to Defendants. This allegation, if true, would neither prove nor disprove that Defendants were employed for Floyd Moore under the general common law meaning of "employed."

Lastly, Defendants' attempt to establish the factual insufficiency of the superseding indictment by citing evidence which may tend to show their innocence is unavailing. There is no summary judgment mechanism in a criminal proceeding. Whether Defendants actually were employed for Floyd Moore is a question of fact to be established at trial, or upon the entry of a plea of guilty, based on the evidence presented at the appropriate time.

*C. Constitutional Challenges to § 922(h)*

Defendants have asserted a number of challenges to the constitutionality of § 922(h). The Court is mindful, however, of two principles of the constitutional avoidance doctrine: First, the Court must "ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Ashwander v. TVA*, 297 U.S. 288, 348 (1936) (Brandeis, J., concurring) (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932)). Second, the Court should not "pass upon a constitutional question although properly presented by the record, if there is also present some other

11

ground upon which the case may be disposed of." *Id*. at 347.

With regard to the first principle, the construction of § 922(h) set forth above should allay some of Defendants' concerns, primarily as to vagueness.  But it leaves unresolved a number of properly presented challenges to the validity of the statute.  These questions ultimately may be unavoidable.  However, it is a fair corollary to the latter principle that constitutional questions should be avoided for the time being if it is foreseeable that alternative grounds for disposing of the matter may present themselves in short order.

Defendants Weaver and Moore have proposed to enter guilty pleas to § 922(h) offenses which would be conditioned on the constitutional rulings of this Court, and, inevitably, the Court of Appeals.  The parties must first establish a factual basis for the pleas, however.  Fed. R. Crim. P. 11(b)(3); *see also Santobello v. New York,* 404 U.S. 257, 262 (1971).  The factual basis for an offense may be established by reference to any evidence in the record.  *United States v. Mastrapa*, 509 F.3d 652, 660 (4th Cir. 2007).  Based on the record as it presently stands, there is reason to doubt that a factual basis may be established for Defendants' pleas.  Defendant Donnie Ray Workman previously pled guilty in this case to a count in the original indictment which charged him and others with conspiring to violate § 922(h).  Defendants Weaver and Moore intend to plead guilty to the corresponding count in the superseding indictment.  A detailed stipulation of facts was attached to Workman's plea agreement for the purpose of establishing the factual basis for his plea.  A review of that stipulation in light of the Court's construction of § 922(h) reveals that an essential element of the offense is not established; namely, there is no evidence that Workman was employed for Floyd Moore.  On this point, the stipulation states, "The PMC has a strict hierarchy and Mr. Moore was superior to Mr. Workman in the structure of the PMC and could tell Mr. Workman what

12

he could and could not do." (Docket 592, ex. A.)  This statement does not establish that Workman was employed by Floyd Moore.  It mentions nothing, for instance, of the manner of Workman's compensation.[7]  Furthermore, the Government represented at the hearing on June 3 that its proof would not indicate that Defendants were hired for wages.  Rather, the theory the Government's evidence would support is that the § 922(h) Defendants received some form of intangible benefit by virtue of their membership in the PMC.  That theory, at least as it has been presented thus far, does not appear to be consistent with a common law definition of employment.  It also must be noted that Defendants and their counsel have been adamant throughout the course of this case that they were not in an employer-employee relationship with Floyd Moore.

The parties will be given an opportunity to establish a factual basis on the record for the proposed pleas.  If the parties establish a factual basis for their pleas consistent with this Court's interpretation of § 922(h), then the constitutional questions would be unavoidable.  The same may hold true if Defendants are to be tried on the § 922(h) offenses.  Nonetheless, prudence counsels that the Court's consideration of the constitutional questions presented should be deferred at least until it is determined whether there is a factual basis for the charges.  If there is no factual basis, the constitutional challenges may become moot.

### III.  CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss [Dockets 619, 620, 884, 915, 917, 1254, and 1266] are **DENIED IN PART** to the extent they dispute the sufficiency of the superseding indictment.  They shall remain under advisement in all other respects.

---

[7] Defendant Workman has not yet been sentenced.  On the record as it stands, the Court would not find a sufficient factual basis to impose judgment on his guilty plea.  This matter will be addressed at a later time.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to Defendants and counsel, and the United States Attorney.

ENTER:        July 9, 2010

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

14